UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MONROE SMALLWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:08 cv 85 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment or Remand of the Decision of the Commissioner of Social
Security filed by the plaintiff, Monroe Smallwood, on August 21,
2008. For the reasons set forth below, the decision of the
Commissioner is **AFFIRMED**.

Background

The plaintiff, Monroe Smallwood, was born on July 7, 1953,
making him 52 years old at the time of the initial hearing in
June 2006 before the Administrative Law Judge (ALJ). (Tr. 90,
375) At the time of the hearing, Smallwood stood five feet, nine
inches and weighed about 240 pounds. (Tr. 376) Smallwood
attended school in Kentucky and completed the seventh grade.
(Tr. 375) School records show that Smallwood repeated first
grade twice, second grade once, and fifth grade once. (Tr. 346-
47) He reported difficulty reading newspapers and writing. (Tr.
376) Smallwood's adult daughter, Angela, helps her father read
his mail. (Tr. 400) Smallwood lives in Hammond, Indiana, in a

house with his wife and daughter. (Tr. 377, 399) While he does not perform regular chores, he shops when he can. (Tr. 391)

Beginning in January 1974, Smallwood worked for U.S. Steel. (Tr. 105) He last worked on December 19, 2004, and retired on January 31, 2005, after exhausting his vacation days. (Tr. 377-78) From 1990 to 2005, Smallwood worked exclusively as a crane operator. (Tr. 379) To reach the crane, he climbed "about three flights of stairs." (Tr. 379) Once inside, Smallwood would stand to operate the crane. (Tr. 381) He received oral instructions from his supervisor regarding where and when to move items using the crane. (Tr. 355-56) On days when the crane was non-operational, which happened about once a month, Smallwood would perform tasks such as emptying barrels, sweeping the floor, or lifting 50 pounds at a time. (Tr. 380-81) The past relevant work summary prepared by vocational expert Michelle Peters on June 5, 2006, indicated that Smallwood's work as a crane operator (D.O.T. Code 921.663-010) and laborer (D.O.T. Code 609.684-014) were classified as semi-skilled, light and unskilled, and medium, respectively. (Tr. 131)

Smallwood testified at the initial hearing before the ALJ in June 2006, indicating he became disabled as of December 19, 2004, because his diabetes and back pain "got worse." (Tr. 378) Smallwood made a number of visits in 2004 to his then-treating doctor, James Walsh, which included laboratory tests. (Tr. 142-149) Notes from a January 27, 2004, visit indicate that Smallwood consistently had a glucose level of over 200, experienced some

2

blurry vision, but did not exhibit any wheezing. (Tr. 144) Dr. Walsh prescribed Darvocet for the pain. (Tr. 144) During a visit on July 27, 2004, Smallwood indicated he was hoping to retire in six months and would be willing to consider insulin to treat his diabetes at that time. (Tr. 143) Dr. Walsh continued to see Smallwood up to April of 2005, prescribing additional medications including Actos, Zocor, Zantac, Albuterol, and Flovent. (Tr. 142-145)

Smallwood applied for disability benefits on March 24, 2005, alleging disability due to hypertension, asthma, diabetes, and arthritis with an onset date of December 19, 2004. (Tr. 24, 31, 90) On April 28, 2005, Dr. Phillip Budzenski evaluated Smallwood at the request of the Indiana Disability Determination Division. (Tr. 150) Dr. Budzenski's report indicated Smallwood was diag- nosed with type II diabetes six years prior (in 1999), had asthma all his life, and had gastroesophageal reflux disease (GERD) for ten to 15 years. (Tr. 150) Smallwood did not take insulin, did not drink, smoked about a quarter pack of cigarettes daily, and had been told to quit. (Tr. 150-51) On average, he smoked about one and one-half packs per day for 40 years. (Tr. 150) Small- wood's wife smoked in the home. (Tr. 150) Smallwood indicated he exercised by walking 30 minutes each day and had no difficulty walking a half mile to work. (Tr. 150) He indicated that he could perform activities of daily living. (Tr. 150-51) Dr. Budzenski observed Smallwood walking with a normal gait. (Tr. 151) A chest examination revealed thoracic kyphosis, and an

examination of Smallwood's musculoskeletal system indicated his
straight leg raising test was normal to 90 degrees.  (Tr. 152-53)
Dr. Budzenski's impressions of Smallwood were as follows: hyper-
tension, type II diabetes (poorly controlled but improving with
weight loss), obesity, thoracic kyphosis, tobacco abuse
("noncompliant with cessation recommendations"), allegations of
asthma (but absent clinical finding), and GERD.  (Tr. 154)  His
report closed with an assessment that Smallwood was capable of
performing medium work for eight hours per day.  (Tr. 155)

A physical residual functional capacity (RFC) assessment was
completed by Dr. R. Wenzler on May 19, 2005.  (Tr. 157)  Small-
wood's primary diagnosis was hypertension, with a secondary
diagnosis of diabetes mellitus and alleged impairments of GERD,
obesity, and thoracic kyphosis.  (Tr. 157)  Smallwood's exertion-
al limitations were listed as the ability to lift or carry 50
pounds occasionally, lift or carry 25 pounds frequently, stand or
walk for six hours of an eight hour workday, sit for six hours of
an eight hour workday, and push or pull without any limitations.
(Tr. 158)  Dr. Wenzler noted that Smallwood had decreased range
of motion in his hips, knees, and ankles, but he had normal gait
and station, regular grip and muscle strength, and normal fine
and gross manipulation.  (Tr. 159)  No postural, manipulative,
visual, communicative, or environmental limitations were estab-
lished.  (Tr. 159-161)  Finally, Dr. Wenzler noted that Small-
wood's ideas regarding his physical limitations were "partially
credible," and the findings in the RFC were "more consistent"

4

with the medical evidence than Smallwood's contentions. (Tr. 162) After a finding in the initial disability determination that Smallwood was not disabled, the claim was denied on May 18, 2005. (Tr. 25, 27-31)

Smallwood filed a timely request for reconsideration on July 11, 2005. (Tr. 14, 34) After he filed the request for consideration, the physical RFC assessment originally completed by Dr. Budzenski (Tr. 157-164) was reviewed and affirmed by M. Ruiz, M.D., on August 18, 2005. (Tr. 164) A second disability determination form indicating Smallwood was not disabled was signed by the disability examiner on August 17, 2005, and M. Ruiz, M.D. on August 18, 2005. (Tr. 26) Smallwood completed a disability report appeal form on September 5, 2005, indicating his back pain had increased in severity beginning on approximately July 1, 2005. (Tr. 119) Smallwood noted his intention to attend physical therapy sessions for his back pain and two herniated discs. (Tr. 120) A physical therapy prescription completed by the Hammond Clinic LLC on September 2, 2005, prescribed treatment twice a week for one month. (Tr. 213) Notes from a physical therapy session on October 5, 2005, indicated that Smallwood reported improvement but that some back pain remained. (Tr. 200)

On September 20, 2005, an EMG study was conducted, revealing an axonal sensory motor polyneuropathy. (Tr. 201-205) Dr. Anjanipriya Tallamraju of the Hammond Clinic continued to prescribe Darvocet for back pain between October 2005 and January 2006. (Tr. 189-197) Laboratory results from late January and

early February 2006 reflect elevated levels of cholesterol, triglycerides, and glucose. (Tr. 165-172)

On February 21, 2006, Smallwood requested a hearing before an ALJ. (Tr. 43) Shortly afterwards, Smallwood attended a consultation at Calumet Surgery Center on March 7, 2006, regarding a complaint of lower back pain. (Tr. 173) The consultation report, prepared by Satish Dasari, M.D., indicates Smallwood complained of "persistent pain" in the lower back for five years, which Smallwood described as a level six to seven on a scale from one to ten. (Tr. 173) Sitting, standing, bending, or walking increased his back pain. (Tr. 173) Dr. Dasari indicated that Smallwood smoked one pack of cigarettes per day and was taking Darvocet, Tricor, Lantus, Crestor, Avandia, hydrochlorothiazide, Enalapril, glyburide, metformin, hydroxyzine, insulin, and theophylline. (Tr. 173) An examination revealed "[u]nremarkable" lungs, and a negative straight leg raising test, but Dr. Dasari concluded that Smallwood had axial back pain, a herniated disc, and degenerative disc disease, which had been ongoing for four to five years. (Tr. 174) Steroid injections were recommended and were administered the same day. (Tr. 174-75) Smallwood indicated that the injections helped with the pain "for two or three days," but then the pain in his back returned. (Tr. 396) No additional steroid injections were administered, since the injection caused Smallwood's blood sugar to rise above 300. (Tr. 396)

A hearing was held before ALJ Dennis Kramer on June 8, 2006, at which Smallwood, his daughter, Angela Smallwood, and vocational expert Michelle Peters testified. (Tr. 14, 370) Peters indicated that Smallwood would not be able to perform his past relevant work. (Tr. 403) In spite of his physical limitations, Peters testified that unskilled positions of assembly and hand-packaging positions were available. (Tr. 403) After adding in Smallwood's asthma (which would suggest avoidance of moderate fumes, smoke, and dust) and considering Smallwood's limited education, age, and transient vision problems, Peters indicated that there would be no jobs available. (Tr 404-406) The ALJ closed the hearing, expecting to make a determination within 60 to 90 days. (Tr. 407) However, after the hearing, the ALJ requested an additional medical evaluation to determine whether Smallwood's condition had changed since he applied for disability benefits in 2005. (Tr. 19)

Smallwood's treating physician, Dr. Tallamraju, completed a Medical Assessment of Ability to do Work-Related Activities (Physical) on July 3, 2006. (Tr. 216-219) Dr. Tallamraju indicated based on MRI test results that Smallwood's ability to lift and carry was limited to a maximum weight of less than 20 pounds for up to two-thirds of an eight hour work day. (Tr. 216) Additionally, based on MRI results, Smallwood would be limited to one hour of standing and walking without interruption and could stand and walk for a maximum of two hours out of an eight hour day. (Tr. 216) Smallwood also would be limited to sitting for

30 minutes at a time for two hours out of an eight hour day.
(Tr. 217)  Dr. Tallamraju also indicated that Smallwood never
could climb, balance, crouch, kneel, or crawl and that he could
stoop only for up to one third of an eight hour day.  (Tr. 217)
His medical history also warranted more than two periods of rest
per day for 30 minutes to an hour.  (Tr. 218)  Smallwood's
chronic diabetes and his herniated discs adversely affected his
reaching, handling, feeling, pushing, and pulling functions.
(Tr. 217)  Based on his examination, Dr. Tallamraju indicated
that Smallwood's exposure to heights, moving machinery, tempera-
ture extremes, chemicals, dust, noise, fumes, humidity, and
vibrations should be limited.  (Tr. 217)  The combined effects of
these impairments exacerbated Smallwood's limitations by way of
causing fatigue, shortness of breath, back pain, and radiation of
pain to his leg.  (Tr. 218)

Smallwood was referred by the Disability Determination
Office for the Social Security Department of the State of Indiana
to Caryn Brown, Psy.D., HSPP, for a mental status examination,
Wechsler Adult Intelligence Scale (WAIS), Wechsler Memory Scale,
Wide Range Achievement Test, and MMPI-2.  (Tr. 220)  During the
consultation, Smallwood stated that he completed the seventh
grade and denied participation in special education classes.
(Tr. 220)  He also stated that his disability was "primarily
physical in nature."  (Tr. 220)  Brown noted that Smallwood
appeared to be "in pain and lethargic" during the interview.
(Tr. 221)  The results of Smallwood's WAIS test indicated a full

scale IQ score of 65, which Brown indicated fell within the "Extremely Low" range of intellectual functioning. (Tr. 223) His MMPI-2 test, although he only completed the clinical scales, revealed results consistent with a person undergoing both physical and psychological stress, which Brown noted is consistent with chronic pain. (Tr. 224) Brown concluded that Smallwood presented with a chronic Adjustment Disorder with Depressed Mood, Borderline Intellectual Function, high blood pressure and chronic pain, limited education, and with a GAF of 58. (Tr. 225) Brown completed a Medical Source Statement (MSS) of Ability to do Work-Related Activities (Mental) on September 5, 2006. (Tr. 226) Based on Smallwood's borderline intellectual functioning and limited education, Brown concluded that Smallwood had slight to moderate limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, and make judgments on simple work-related decisions. (Tr. 226) In addition, Smallwood had slight limitations on the ability to respond appropriately to work pressures in a usual work setting and the ability to respond appropriately to changes in a routine work setting. (Tr. 227)

Dr. Budzenski re-examined Smallwood on September 5, 2006. (Tr. 230) According to Smallwood, this second exam lasted approximately ten minutes. (Tr. 354) Smallwood's daughter, who accompanied Smallwood to the examination and waited outside, indicated the exam with Dr. Budzenski lasted about 15 minutes. (Tr. 358) Dr. Budzenski noted Smallwood's history of diabetes,

9

asthma, and hypertension in his medical examination report. (Tr. 230) Smallwood could not specifically state to Dr. Budzenski why he no longer could work in the steel mill after December 2005. (Tr. 231) Smallwood described shortness of breath and a cough related to smoking. (Tr. 231) Smallwood's gait was observed as normal, with an absence of unsteadiness, lurching, or unpredictability. (Tr. 232) His lungs appeared clear without a sign of wheezing. (Tr. 232) Smallwood was observed as able to walk on his toes, his heels, stand on either leg, and perform a partial squat "without difficulty." (Tr. 234) A pulmonary function test revealed moderate airway obstruction. (Tr. 234, 238-243)

Based on this examination, Dr. Budzenski noted the following impressions: obesity, type II diabetes, tobacco abuse (noncompliant with recommendations to quit), "[a]llegation of [a]sthma," chest pain, hypertension, tachycardia (possibly related to anxiety), and allegations of incontinence without findings. (Tr. 234-35) Dr. Budzenski completed a range of motion chart by leaving all areas blank. (Tr. 236) According to the instructions on the form, completing the chart in this manner indicated that Smallwood's range of motion for the spine, upper extremities, and lower extremities were normal. (Tr. 236)

Laboratory tests ordered by Dr. Budzenski on September 5, 2006, showed normal results, with the exception of an elevated glucose level of 259. (Tr. 237) The MSS (Physical) completed by Dr. Budzenski on September 5, 2006, indicated Smallwood was able to lift or carry 50 pounds occasionally and could lift or carry

20 pounds frequently. (Tr. 244) No standing or walking, sitting, pushing or pulling, reaching, handling, fingering, feeling, hearing, or speaking limitations were noted. (Tr. 244-246) Smallwood was observed to have "[w]ell preserved strength and range of motion." (Tr. 245) Smallwood was able to climb ramps and stairs, balance, kneel, crouch, crawl, and stoop frequently, but due to his anxiety he never could climb ladders, ropes, or scaffolding. (Tr. 245) In addition, Smallwood's uncorrected distance vision appeared impaired. (Tr. 246) Finally, Dr. Budzenski noted that Smallwood's exposures to hazards should be limited, but no limitations to temperature extremes, noise, dust, vibration, humidity, or fumes were necessary. (Tr. 247)

The staff at Munster Eye Associates PC performed a visual examination of Smallwood on September 26, 2006. (Tr. 248-251) Smallwood was noted to have blurry vision, but the physician indicated that there were no restrictions on working from a "vision standpoint" (Tr. 249-50) The MSS, signed on September 26, 2006, confirmed that Smallwood's vision was unaffected by his impairment. (Tr. 254-257)

A September 19, 2006 evaluation by Dr. Arti Raj of Smallwood's chest revealed hyperinflation consistent with COPD. (Tr. 263-64) Laboratory tests from October 2, 2006, indicated high glucose and high cholesterol. (Tr. 265-66) An echocardiogram reviewed by the Hammond Clinic on October 4, 2006, conducted due to shortness of breath, revealed an ejection fraction of 55%, evidence of diastolic dysfunction, and trivial tricuspid valve

regurgitation. (Tr. 262) A December 6, 2006 pulmonary function test showed a moderate obstructive defect with no restriction present. (Tr. 261)

Dr. Tallamraju continued to see Smallwood frequently for his diabetes, back pain, and to manage his medications between June 2006 and June 2007. (Tr. 270-329) In a neurology consultation on January 12, 2007, Smallwood complained of daily pain in the lower back and knee pain, and Dr. Tallamraju noted a suspicion that Smallwood was dependent on narcotics (specifically, he only wanted prescriptions for Darvocet). (Tr. 282-83) The refusal to refill Smallwood's Darvocet prescription during an office visit on March 1, 2007, resulted in Smallwood becoming upset and almost walking out of the office. (Tr. 279) However, the office refilled Smallwood's Darvocet prescription on subsequent occasions, including April 13, 2007, May 2, 2007, and May 24, 2007. (Tr. 273, 274, 276) An eye exam conducted on June 4, 2007, indicated the presence of a head tremor and white lesions on Smallwood's irises. (Tr. 301-02)

A second hearing was held before ALJ Kramer on March 14, 2007. (Tr. 348-369) Smallwood, his daughter Angela, and vocational expert Thomas Grzesik testified at the hearing. (Tr. 349) The ALJ noted and Smallwood's counsel confirmed that no information concerning Smallwood's IQ prior to high school had been provided. (Tr. 351) Grzesik testified that with the limitations outlined by Brown and in Dr. Budzenski's MSS, and based on Smallwood's memory, IQ, education, past work, and vision, Smallwood

would not be able to perform his past work. (Tr. 362) He would be limited to unskilled medium positions with the limitations of distant vision and moderate limitations of detailed work and judgment. (Tr. 362) When asked to name three positions available, Grzesik noted the positions of hand packager (D.O.T. code 920.587-018), salvage laborer (D.O.T. code 929.687-022), and storage laborer (D.O.T. code 922.687-058) would be available. (Tr. 362) However, Grzesik then noted that based on an inability to work a full eight hour day, there would be no suitable jobs available. (Tr. 363)

After the second hearing, Dr. Tallamraju was sent a letter from the ALJ on June 1, 2007. (Tr. 267) The letter solicited a copy of Dr. Tallamraju's curriculum vitae, further medical rationale for opinions regarding Smallwood's functional capacity provided on July 3, 2006, a new RFC form, and any additional medical records after May 19, 2006. (Tr. 267) According to the ALJ, Dr. Tallamraju did not provide a new RFC form or provide further medical rational to support the opinions in her earlier assessment. (Tr. 22)

The ALJ denied Smallwood's application by written decision on August 17, 2007. (Tr. 11-24) While the ALJ found that Smallwood had severe impairments of obesity, diabetes, asthma, hypertension, adjustment disorder, borderline intellectual functioning, and disorders of the back, the ALJ did not find that Smallwood had any impairments meeting a listing. (Tr. 16-17) After reviewing the record, the ALJ found that Smallwood had the

13

residual functional capacity to lift or carry 50 pounds occasionally, lift or carry 20 pounds frequently, and sit, stand, or walk without limitation. Smallwood could not climb ropes, ladders, or scaffolds, had corrected vision, and should avoid workplace hazards (such as moving machinery and unprotected heights). (Tr. 17) Additionally, the ALJ found that Smallwood should avoid concentrated exposure to pulmonary irritants, was slightly limited in the ability to respond to work pressures and changes, and was slightly to moderately limited in the ability to make judgments on work-related decisions, as well as slightly to moderately limited in the ability to understand, remember, and carry out detailed instructions. (Tr. 18) The ALJ determined that Smallwood could not perform any past relevant work and had no transferable skills. (Tr. 23) However, based on Smallwood's age, education, work experience, and RFC, the ALJ concluded jobs existed in significant numbers that Smallwood could perform. (Tr. 23) The ALJ concluded that Smallwood was not disabled under the Social Security Act. (Tr. 24)

Smallwood requested review by the Appeals Council on September 5, 2007. (Tr. 10) Smallwood's request for review was denied by the Appeals Council on January 15, 2008, and Smallwood filed a motion for summary judgment or remand in this court on August 21, 2008. (Tr. 4-6; Pltf. Br. at p. 1) Specifically, Smallwood alleges that the ALJ erred in his decision to deny disability benefits by failing to determine properly whether Smallwood met Listing 12.05(C), making a faulty RFC determination, making an

improper credibility determination, and making an erroneous Step Five finding.  (Pltf. Br. at pp. 11-25)

<u>Discussion</u>

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence.  42 U.S.C. §405(g)("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).  Substantial evidence is defined as relevant evidence that a reasonable person may accept as adequate in order to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 852 (1972).  An ALJ's decision must be affirmed if the findings are supported by substantial evidence and there have been no errors of law.  *Rice v. Barnhart*, 384 F.3d 363, 368=69 (7th Cir. 2004).

Disability insurance benefits are available only to a claimant who can establish "disability" under the terms of the Social Security Act by showing that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining

whether a claimant has met the burden of establishing disability. 20 C.F.R. §404.1520. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. §404.1520(b). If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). Third, the ALJ determines whether a severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. §401, pt. 404, subpt. P, app. 1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not meet a listing, then the ALJ reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. §404.1520(e). However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. 20 C.F.R. §404.1520(f).

Smallwood raises four main arguments on appeal. First, he challenges the ALJ's determination that he did not meet Listing

16

Section 12.05(C).  Next, he asserts that the ALJ's RFC determination was improper.  Smallwood then argues that the ALJ's credibility determination was flawed.  Finally, he alleges that the ALJ's Step Five determination was erroneous.

Smallwood first argues the finding that he did not meet Listing Section 12.05(C) for mental retardation.[1]  For a claimant to show that he meets a listed impairment, he must demonstrate that his impairment meets each required criterion, and he bears the burden of proof in showing that his condition qualifies. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).  A condition that meets only some of the required medical criteria, "no matter how severely," does not meet a listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

Section 12.00(A) describes the structure of Listing Section 12.05.  Specifically, the regulations state that if an "impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria," an impairment comes within the listing.  20 C.F.R. pt. 404, subpt. P, app. 1 §12.00(A).  Listing section 12.05(C) provides in relevant part:

> **12.05** *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e, the evidence demonstrates or supports onset of the impairment before age 22.

---

[1] Smallwood does not challenge the ALJ's determination that the listings for diabetes mellitus (§9.08), hypertension (§4.03), asthma (§3.02), chronic obstructive pulmonary disease (§3.03), and affective disorder (§12.04) were not met.

> The required level of severity for this dis-
> order is met when the requirements in A, B,
> C, or D are satisfied.

> * * *

> C. A valid verbal, performance, or full scale
> IQ score of 60 through 70 and a physical or
> other mental impairment imposing an addi-
> tional and significant work-related limita-
> tion of function.

Thus, the structure of Listing Section 12.05 indicates that a claimant must show *both* that he meets the listing's definition of mental retardation *and* that he meets the required severity by satisfying the requirements in either A, B, C, or D. *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006).

In order to meet Listing Section 12.05(C), there must be evidence that "subaverage intellectual functioning" was present prior to age 22. If a claimant meets the definition of mental retardation, then the analysis shifts to whether the claimant's mental retardation is sufficiently severe to qualify as a dis-ability. 20 C.F.R. pt. 404, subpt. P, app. 1 §12.05. If the individual is mentally retarded as defined by the regulations and has an IQ of less than 60, the claimant is considered disabled under Listing Section 12.05 without further inquiry. 20 C.F.R. pt. 404, subpt. P, app. 1 §12.05(B). However, an IQ over 60 is insufficient to establish disability under Listing Section 12.05 alone, since people with low IQ's may be able to perform gainful employment. *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007). Thus, a claimant with an IQ between 60 and 70 also must show a "physical or other mental impairment" that creates an additional

and significant limitation on his ability to work.  20 C.F.R. pt. 404, subpt. P, app. 1 §12.05(C).  *See also* **Maggard**, 167 F.3d at 380 (stating same).

The ALJ's determination that the record did not support an onset of subaverage intellectual functioning and deficits in adaptive function prior to age 22 is challenged by Smallwood.  He alleges that his school record, which indicates he only completed sixth grade and needed to repeat two grades, proves he had significant deficits prior to age 22.  Smallwood also points to the IQ test completed by Caryn Brown, a licensed psychologist, in 2006, which showed an IQ score of 65.  Brown indicated that  Smallwood's IQ placed him at the low end of the intellectual spectrum, and she concluded that Smallwood had borderline intellectual functioning.  Smallwood concludes that his school record plus his IQ of 65 are sufficient proof of the existence of a deficit prior to age 22, supporting a finding of mental retardation under Listing Section 12.05(C).

Although Smallwood left school after the sixth grade and repeated several grades, he presented no evidence to support a contention that his lack of success in schooling was a direct cause of subaverage intellectual functioning.  When questioned in the hearing before the ALJ, Smallwood did not indicate he participated in special education classes.

The Circuit courts presume that a person's IQ remains stable absent evidence of a change in intellectual function.  **Muncy v. Apfel**, 247 F.3d 728, 734 (8th Cir. 2001).  *See, e.g.,* **Guzman v.**

***Bowman***, 801 F.2d 273, 275 (7th Cir. 1986)(advising that absent evidence to the contrary, IQ test taken subsequently "should be assumed" to reflect IQ during the insured period); ***Branham v. Heckler***, 775 F.2d 1271, 1274 (4th Cir. 1985)(explaining that the fact that no IQ test was taken earlier in life "does not preclude a finding of retardation"). Presumably, Smallwood's IQ of 65 has remained stable over time.[2] However, a stable IQ, albeit low, does not necessarily equate to mental retardation as defined by Listing Section 12.05(C) before age 22. The Seventh Circuit has indicated that people with low IQs may be able to perform work. ***Novy***, 497 F.3d at 709.

Pursuant to regulations, the ALJ is allowed to consider evidence of past work history in assessing the "ability or inability to function in a work setting." 20 C.F.R. pt. 404, subpt. P, app. 1 §12.00(A). *See also* ***Adkins v. Astrue***, 226 Fed.Appx 600, 605 (7th Cir. 2007)(explaining that although low IQ scores might be an indicator of retardation, other items, "including . . . employment history, must be considered and weighed" and finding that claimant failed to prove deficits prior to age 22 even though school records were submitted showing only eighth grade was completed, due in part to his long work history); ***Maggard***, 167 F.3d at 380 (finding that a low IQ score existed,

_____

[2]Neither Smallwood nor the government contests Smallwood's IQ results. This is not a case, as Smallwood suggests, where the ALJ substituted his own medical findings for that of a medical professional. *See* ***Rohan v. Chater***, 98 F.3d 966, 970-71 (7th Cir. 1996)(exemplifying such a case). Indeed, here the ALJ adopted the determination of Brown, a licensed psychologist, in making his determination that Smallwood had borderline intellectual functioning.

but not mental retardation, in part due to claimant's "ability to withstand the stress and pleasures associated with a day-to-day work activity").

Here, the ALJ permissibly considered Smallwood's work history, noting that in spite of Smallwood's intellectual limitations, he worked as a crane operator for several years. Additionally, Smallwood was married with one child and could perform tasks around the house, some shopping, and various activities of daily living. Taking into account the stability of Smallwood's IQ over time which placed him at a borderline level of intellectual functioning, his ability to work successfully as a crane operator, Smallwood's own contentions that his current inability to work was due primarily to physical limitations, and the paucity of evidence offered by Smallwood to show an onset of a deficit prior to age 22, the ALJ's determination that Smallwood did not prove he met Listing Section 12.05(C) is supported by substantial evidence in the record.

Secondly, Smallwood contends that the ALJ's RFC determination was erroneous. Specifically, he alleges the ALJ ignored evidence as to mental limitations, failed to weigh properly the opinions of record, relied too much on his own lay opinion, and failed to consider Smallwood's obesity. Residual functional capacity (RFC) measures what a claimant is able to do in spite of his impairments. 20 C.F.R. §404.1545(a)(1). The determination of a claimant's RFC is an issue that is "reserved" to the ALJ, who is required to consider the entire record and has a responsi-

bility to resolve any "conflicting medical evidence." ***Diaz v.
Chater***, 55 F.3d 300, 306 n.2 (7th Cir. 1995).

After examining the record, the ALJ decided that Smallwood
retained the ability to lift and carry 20 pounds frequently and
50 pounds occasionally, and stand, sit or walk without limita-
tion. This RFC is classified as medium work pursuant to 20
C.F.R. §404.1567(c). The ALJ added limitations to Smallwood's
RFC. Specifically, he found Smallwood should not climb ropes,
ladders, or scaffolds, should avoid workplace hazards such as
dangerous machinery or heights, and should avoid concentrated
exposure to pulmonary irritants. Smallwood also was found to be
slightly impaired in his ability to respond to pressures in a
work setting and slightly to moderately impaired in his ability
to make judgments and to understand, remember, and carry out
detailed instructions.

Regarding his RFC determination, Smallwood first argues that
the ALJ erroneously relied solely on the consultative examiners'
reports assessing IQ and physical condition, despite the brevity
of these evaluations. Smallwood asserts this was a piecemeal
evaluation of his limitations which did not amount to substantial
evidence. However, the ALJ pointed to other evidence in addition
to these findings to support his RFC decision. The ALJ consid-
ered not only the assessments by Brown and Dr. Budzenski but also
Smallwood's own medical records, which reflect Dr. Budzenski's
findings that Smallwood's gait, extremities, and spine were
normal. In addition, the ALJ cited the improvement in Small-

22

wood's back pain after a course of physical therapy as evidence he weighed against Smallwood's allegations of persistent back pain.  Smallwood's possible dependence on Darvocet, noted by his own physician, also was considered by the ALJ as a possible impetus for Smallwood's pain complaints.  The ophthalmologic examination, the ALJ noted, reflected corrected vision, which would not affect Smallwood's RFC.  Rather than relying on Dr. Budzenski's RFC assessment, the ALJ found that Dr. Budzenski's restrictions were insufficient, and so added the additional restriction of exposure to concentrated pulmonary irritants due to Smallwood's asthma.  Smallwood's testimony about his limitations also was considered by the ALJ, although some of Smallwood's statements regarding the limiting effects of his symptoms were found to be not entirely credible, as discussed below.  Additionally, the cognitive/mental limitations suggested by Brown also were reflected in the RFC finding.  In this manner, the ALJ explicitly detailed sources in the record he drew on in making his RFC determination in addition to the recommendations completed by Brown and Dr. Budzenski.

Smallwood asserts that the ALJ improperly and arbitrarily rejected Dr. Tallamraju's more limitational RFC assessment, arguing that her opinion should have been granted greater weight since she was Smallwood's treating physician.  A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable

23

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §404.1527(d)(2). *See also* SSR 96-2p (same); ***Schmidt v. Astrue***, 496 F.3d 833, 842 (7th Cir. 2007)(same); ***Gudgel v. Barnhart***, 345 F.3d 467, 470 (7th Cir. 2003)(same). Inconsistencies in a treating physician's opinion, whether conflicting internally or with other substantial evidence in the record, may justify denying the opinion controlling weight. 20 C.F.R. §404.1527(c)(2); ***Clifford v. Apfel***, 227 F.3d 863, 871 (7th Cir. 2000). *See, e.g., **Schmidt,*** 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for re-editing or rejecting evidence of disability."); ***Latkowski v. Barnhart***, 93 Fed. Appx. 963, 969 (7th Cir. 2004)(same).

When well-supported contradictory evidence to the treating physician's opinion exists, Judge Richard Posner has indicated that the plausible interpretation of 20 C.F.R. §404.1527(d)(2), as supported by case law, is that the physician's opinion no longer is controlling and becomes "just one more piece of evidence for the [ALJ] to weigh." ***Holfslien v. Barnhart***, 439 F.3d 375, 376-77 (7th Cir. 2006). Even if an opinion from a treating physician loses controlling weight because well-supported contradictory medical evidence exists, the ALJ still must decide how much weight to give the opinion. ***Holfslien***, 439 F.3d at 376-77.

24

If a conflict between opinions of a treating physician and a consulting physician arises, the ALJ must consider the ability of a treating physician to observe a claimant over an extended period of time, but "the treating physician's opinion is . . . not the final word on a claimant's disability." ***Books v. Chater***, 91 F.3d 972, 979 (7th Cir. 1996). The very fact that an opinion is from a treating physician may detract from the weight of the opinion, since physicians may "bend over backwards to assist a patient" to obtain disability benefits. Ultimately the weight that an ALJ gives to a treating physician's opinion is dependent on the consideration of the circumstances in each case. ***Holf-slien***, 439 F.3d at 377.

In deciding how much weight to assign to a treating physician's opinion, the ALJ is required by the regulations to "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." 20 C.F.R. §404.1527(d)(2); ***Moss v. Astrue***, 555 F.3d 556, 561 (7th Cir. 2009); 20 C.F.R. §404.1527(d)(2). Once an ALJ decides how much weight to give a treating physician's opinion, he must "minimally articulate his reasons for crediting or rejecting evidence of disability." ***Clifford***, 227 F.3d at 870 (*quoting* ***Scivally v. Sullivan***, 966 F.2d 1070, 1076 (7th Cir. 1992)). *See also* 20 C.F.R. §404.1527(d)(2) ("We will always give good reasons in our notice of determination

or decision for the weight we give your treating source's opinion.").

    Smallwood contends that the ALJ improperly rejected Dr. Tallamraju's RFC opinion because it was inconsistent with Smallwood's own medical records. Smallwood proceeds to list findings from treatment notes in the record that show tenderness and pain, suggesting that the ALJ "play[ed] doctor" and ignored Dr. Tallamraju's finding, which, Smallwood suggests, supported by "[a]ll of the treatment notes of record" and should have been given greater weight. The ALJ's analysis, according to C.F.R. §404.1527(d)(2) and described by Judge Posner, is governed by a two step process. *Holfslien*, 439 F.3d at 377. First, the ALJ needed to decide whether to give Dr. Tallamraju's opinion, as the treating physician, controlling weight. Although the ALJ noted that the opinion of a treating physician normally should be given great weight, he concluded that in this case there were inconsistencies both with Smallwood's own treatment records which showed on several occasions unremarkable clinical signs and with the consultative opinions offered by Dr. Budzenski. Specifically, there was a direct conflict between Dr. Tallamraju's notation in her RFC assessment that Smallwood's reaching, handling, and pushing/pulling functions were limited and that he could never climb, balance, crouch, kneel, or crawl, and Dr. Budzenski's direct observation that Smallwood showed no muscle atrophy in his hands, had a normal grip strength of five out of five, was able to stand on one leg and walk without instability, could perform a

squat maneuver "without difficulty," and had regular range of motion. (Tr. 234)  An examination by Smallwood's own doctors in July 2006 showed normal gait and station, and a later examination in January 2007 noted regular gait, station, and motor skills. In addition, the ALJ pointed out in his opinion that Dr. Tallamraju's assessment superficially cited the basis of her findings as "exam," "MRI results," and "functional capacity."  Since Dr. Tallamraju's opinion was arguably not "well-supported" by clinical evidence and was inconsistent with evidence in the record (including two evaluations by Dr. Budzenski based on direct observation of Smallwood), and the ALJ articulated these inconsistencies, it was reasonable for the ALJ not to afford Dr. Tallamraju's assessment controlling weight. *See **Schmidt**,* 496 F.3d at 842 *(permitting ALJ to discount treating physician's medical opinion if inconsistent with other opinions or internally inconsistent so long as reasons minimally articulated).*

After the issue of controlling weight was decided, the ALJ still was required to decide how much weight to give Dr. Tallamraju's opinion, and in doing so was directed to consider a number of factors. ***Moss***, 555 F.3d at 561. *See also* C.F.R. §404.1527(d) (explaining that length of treatment, nature of relationship, supportability, consistency, and specialization will be considered in assigning weight to a treating source's opinion).  Like the ALJ in ***Skarbek v. Barnhart***, 390 F.3d 500, 503 (7th Cir. 2004) who the court held provided an adequate explanation for giving more weight to opinions of other doctors rather than the treating

physician, the ALJ decided in this case that Dr. Tallamraju's opinion was "not well-supported by medical evidence." Specifically, the ALJ decided to give Dr. Tallamraju's assessment little weight due to the inconsistency with her treatment records and the consultative evaluations by Dr. Budzenski, the fact that some of Dr. Tallamraju's limitations seemed to be based on Smallwood's self-report of symptoms (which the ALJ did not find completely credible), her relative lack of experience as a clinical physician, and her failure to list specific reasons for the basis of her restrictions.

On June 1, 2007, the ALJ requested that Dr. Tallamraju provide additional rationale for her findings, including reference to clinical results to support her assessment. However, her failure to do so was noted in the ALJ's opinion. Smallwood disagrees that Dr. Tallamraju declined to offer additional medical rationale in response to the ALJ's request, arguing that the Hammond Clinic forwarded Dr. Tallamraju's curriculum vitae and Smallwood's more recent medical records. However, the ALJ's request for additional records on June 1, 2007, specifically requested that Dr. Tallamraju provide further rationale with reference to her clinical findings to support her determination of Smallwood's functional capacity on July 3, 2006. The letter indicated that a new RFC form was enclosed for the doctor's completion *and* requested that any medical records after May 19, 2006, be provided. The request also stated that a failure to respond might result in the ALJ giving little weight to the

doctor's opinion. The ALJ considered the curriculum vitae and additional medical records, without additional guidance from Dr. Tallamraju, insufficient to explain her medical rationale for her assessment of Smallwood's residual functional capacity on July 3, 2006.

Therefore, unlike the ALJ in *Clifford*, who discounted a physician's opinion without relying on other medical evidence that contradicted the physician's finding, here the ALJ articulated reasons for rejecting Dr. Tallamraju's opinion based on medical evidence in the record. The ALJ was allowed to reject Dr. Tallamraju's cursory RFC opinion in the face of conflicting medical evidence, and "minimally articulate[d]" his reasons for doing so. *Schmidt*, 496 F.3d at 842. *See also* *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001)("When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision").

Smallwood also suggests that in determining the RFC, the ALJ failed to consider obesity as required by SSR 02-1p in determining the RFC. If a claimant is obese, the ALJ must specifically address the "incremental effect" of obesity on the claimant's limitations. *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). Even if a claimant does not contend that obesity is one of his impairments, SSR 02-1p requires an ALJ to consider the effect of obesity on the claimant's other conditions. However, failure to consider these effects can be "harmless error." *Pro-*

*chaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006).  Since the ALJ in *Prochaska* "sufficiently analyzed" the claimant's obesity (by implicitly considering the issue, in part by relying on medical documents that noted the claimant's height and weight), and because the claimant did not specify how obesity specifically impaired her work ability, the Seventh Circuit found that any error on the ALJ's part in explicitly considering the claimant's obesity was harmless.  *Prochaska*, 454 F.3d at 737.  *See also Skarbek*, 390 F.3d at 504 (holding that the ALJ's adoption of limitations suggested by doctors who were aware of claimant's obesity, plus claimant's failure in specifying how weight impaired the ability to work, was harmless error).

Here, the ALJ's treatment of Smallwood's obesity was, at a minimum, as thorough as that of the ALJ in *Prochaska*.  Specifically, the ALJ noted that one of Smallwood's severe impairments was obesity.  He later discussed Smallwood's obesity in his determination that Smallwood failed to meet any listed impairments in 20 C.F.R. part 404.  The ALJ asked Smallwood about his weight at the hearing and reviewed records from treating and consulting doctors that noted Smallwood's weight.  Smallwood, however, does not explain how his weight kept him from working.  Thus, even if the ALJ did not explicitly consider the effects of obesity on Smallwood's limitations, this would be harmless error.

For his third argument, Smallwood alleges that the ALJ made an improper determination regarding Smallwood's credibility.  A reviewing court will sustain the ALJ's credibility determination

unless it is "patently wrong" and not supported by the record. *Schmidt*, 496 F.3d at 843.  *See also Prochaska*, 454 F.3d at 738 ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."); *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004)(explaining that a credibility determination "must be supported" where a court can determine the weight the ALJ assigned to the claimant's statements, and the reasons for the weight).  The ALJ's "unique position to observe a witness" entitles his opinion to great deference.  *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997).  *See also Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006)(instructing that a credibility determination is ordinarily binding, unless grounded on "errors of fact or logic").  However, if the ALJ does not make explicit findings "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference.  *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).  Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision."  *Clifford*, 227 F.3d at 872.

     The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms . . . and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §404.1529(a).  *See also Arnold v. Barnhart*,

473 F.3d 816, 823 (7th Cir. 2007)("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record.").  The ALJ should consider multiple factors, including the claimant's "daily activities . . . , level of pain or symptoms, aggravating factors, medication, treatment, and limitations."  *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

As to his credibility, Smallwood initially alleges that the ALJ improperly discounted his credibility due to his non-compliance with physician recommendations to quit smoking, contrary to SSR 96-7p and 20 C.F.R. §404.1529.  A claimant's failure to follow a treatment plan can decrease credibility when a claimant "does not have a good reason for the failure . . . of treatment," but for the ALJ to draw inferences about the claimant's condition from a failure to comply, an ALJ first must allow the claimant to explain the reasons for non-compliance.  *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)(illustrating that failure to comply due to inability to pay for treatment, for example, may be an acceptable reason for non-compliance).  If the ALJ completely discounted Smallwood's description of his symptoms and limitations (which included shortness of breath and problems around dust) based on a failure to quit smoking, then this could have presented a problem, since the ALJ did not specifically inquire during either hearing why Smallwood continued to smoke.  However, while the ALJ noted Smallwood's noncompliance with recommendations to quit smoking, he ultimately concluded, based on Small-

32

wood's history of asthma (and in spite of Dr. Budzenski's opinion that no environmental limitations were necessary), that Smallwood should avoid concentrated exposure to pulmonary irritants. Thus, it seems that Smallwood's continued smoking did not play a significant factor in the ALJ's decision to deny benefits. Rather, the ALJ placed *more restrictive* limitations on the RFC because of Smallwood's asthma, regardless of whether smoking cigarettes might have caused or exacerbated asthmatic symptoms.

Smallwood also argues that the ALJ found no support for Smallwood's allegations of pain and limitations, and was too vague in his assessment that Smallwood's statements concerning the intensity, limiting effects, and persistence of his impairments were not completely credible. If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." 20 C.F.R. §404.1529(c). *See also* **Schmidt**, 395 F.3d at 746=47 ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between

the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p. Rather, if the

> [c]laimant indicates that pain is a signifi-
> cant factor of his or her alleged inability
> to work, the ALJ must obtain detailed de-
> scriptions of the claimant's daily activities
> by directing specific inquiries about the
> pain and its effects to the claimant. She
> must investigate all avenues presented that
> relate to pain, including claimant's prior
> work record, information and observations by
> treating physicians, examining physicians,
> and third parties. Factors that must be
> considered include the nature and intensity
> of the claimant's pain, precipitation and
> aggravating factors, dosage and effectiveness
> of any pain medications, other treatment for
> relief of pain, functional restrictions, and
> the claimant's daily activities. (internal
> citations omitted).
>
> *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir.
> 1994)

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement. . . . [t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. *See also Diaz*, 55 F.3d at 307-08

(stating that the ALJ must articulate, at some minimum level, his analysis of the evidence).

Contrary to Smallwood's suggestion that the ALJ vaguely decided his allegations of pain were not credible, the ALJ explained how he found Smallwood's testimony inconsistent with the objective medical evidence.  He pointed to a discrepancy between Smallwood's complaints of physical limitations (including an inability to lift or carry more than ten or 15 pounds) and Dr. Budzenski's evaluations, which revealed normal gait, an ability to perform postural maneuvers, and normal grip strength.   Rather than simply relying on the opinion of state physicians, the ALJ also noted that Smallwood's own treating physicians described findings regarding his motor strength, gait, spine, and pelvis as normal.  Smallwood's reports of continued back pain were contrasted with reports from his course of physical therapy, which indicated that Smallwood had met the goals of therapy except for back pain that was occasional and minimal.  Although Smallwood expressed a need to lie down for several hours per day, the ALJ did not find this limitation reflected in the medical records. The ALJ noted Smallwood's potential dependence on the narcotic Darvocet, which the ALJ concluded might have influenced Smallwood's complaints of pain.  The ALJ found no suggestion that Smallwood's asthma had worsened since his retirement in 2004 and noted that he was able to work despite his asthma for many years. However, the ALJ ultimately concluded that there should be some limit on Smallwood's exposure to pulmonary irritants, contrary to

Dr. Budzenski's opinion, due to Smallwood's asthma.  The ALJ also noted that while Smallwood reported blurry vision, an examiner indicated that his vision would not affect his RFC.

Thus, the ALJ articulated specific reasons for his credibility assessment that amounted to more than "a single, conclusory statement."  SSR 96-7p.  Like the ALJ in *Schmidt*, who the Seventh Circuit held presented sufficient reasons for a finding that the claimant's allegations "were not fully credible," here, the ALJ specifically indicated that he considered SSR 96-7p and 20 C.F.R. §404.1529 in making his assessment.  The ALJ supported his conclusions by pointing out conflicts between medical records and Smallwood's self-reporting of pain and considered Smallwood's testimony and evidence concerning his daily activities, years of work, and self-sufficiency for hygiene.  *Schmidt*, 496 F.3d at 843-44.  Although subjective complaints of pain cannot be disregarded summarily because they are unsupported by objective evidence, discrepancies between the "degree of pain" reported by a claimant and that suggested by medical evidence "is probative of exaggeration."  *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005).  In finding that Smallwood's reported intensity of pain was not supported by the clinical evidence, and listing his reasons for doing so, the ALJ's negative determination regarding Smallwood's credibility was not "patently wrong." *Schmidt*, 496 F.3d at 843.

Thus, the ALJ took into account the evidence when making his RFC determination.  Though Smallwood may disagree with the

concerning weight afforded his treating physician's opinion and the credibility findings of his own statements, the ALJ provided reasons for his assessment that enable this court "to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. The ALJ's ultimate assessment of Smallwood's RFC incorporated the physical limitations proposed by Dr. Budzenski, the psychological/cognitive limitations of Brown, and additional limitations based on Smallwood's asthma, while also considering the evidence presented by Smallwood's medical records, his testimony, and his treating physician's opinion. Rather than ignoring substantial evidence, as Smallwood contends, the ALJ considered the record and resolved what he construed as inconsistencies. *See Diaz*, 55 F.3d at 306, n.2 (supporting this notion).

Smallwood's fourth and final contention is that the ALJ's Step Five finding was erroneous due to an incomplete hypothetical posed to VE Grezsik. The Commissioner has the burden to establish at Step Five that given Smallwood's condition, he could perform substantial gainful work existing in the national economy. *Steward v. Bowen*, 858 F.2d 1295, 1297 n.2 (7th Cir. 1988). During both hearings, the ALJ consulted a VE to help assess whether there would be jobs that Smallwood could perform in spite of his limitations. Smallwood contends that the ALJ did not incorporate his mental limitations in dealing with detailed instructions and making work-related judgments. However, the ALJ specifically asked VE Grezsik to consider Exhibit 8F (the MSS report completed by Brown) in determining what work, if any,

Smallwood could perform.  Brown's MSS lists slight to moderate impairments in the ability to carry out detailed instructions, understand and remember detailed instructions, and make judgments on work-related decisions.

Smallwood next suggests that the ALJ's failure to incorporate the exposure to pulmonary irritant limitation is reversible error.  When a claimant has non-exertional limitations which might "significantly reduce the range of work [he] can perform, the ALJ . . . must . . . consult a VE to determine whether the claimant can perform a significant number of jobs." *Villano*, 556 F.3d at 564.  Specifically, a hypothetical posed to a VE must include "all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). *See also* *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004) ("When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand.").  The ALJ concluded that one of Smallwood's severe impairments was asthma and decided as part of his RFC determination that Smallwood should "avoid concentrated exposure to pulmonary irritants due to asthma."[3] (Tr. 21)  If the ALJ relied on the testimony of the VE to deter-

---

[3] The ALJ noted that Smallwood's record reveals a long history of asthma and listed it as one of Smallwood's severe impairments, however the ALJ did not find that Smallwood met the listed impairments of either §3.02 (asthma) or §3.03 (COPD).

mine what jobs were available to Smallwood in spite of his limitations, then the ALJ's hypothetical should have incorporated this environmental limitation. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

By the ALJ's own admission, he failed to pose a hypothetical to VE Grezsik that included limited exposure to pulmonary irritants. However, a hypothetical posed to a VE does not need to include "every detail" of the claimant's impairments, if the record shows that the VE reviewed the claimant's medical records prior to the hearing. *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994). *See also Coleman v. Astrue*, 269 Fed.Appx. 596, 600 (7th Cir. 2008)(explaining that an incomplete hypothetical can be "cured and the omitted limitations imputed to the vocational expert" where the expert has "an opportunity to absorb all of the claimant's relevant limitations through a mixture of the hypothetical, the medical evidence in the record, and the hearing testimony"; *Young*, 362 F.3d at 1003 (explaining that if a hypothetical does not include all limitations, there must be "some amount of evidence" on record to show the VE knew the extent of the claimant's limitations); *Cass v. Shalala*, 8 F.3d 552, 556 (7th Cir. 1993)(stating that hypothetical questions which omit medical evidence from the record "do not necessarily create reversible error," when evidence shows that the VE considered the medical documents prior to the hearing). Though VE Grezsik testified that he reviewed Smallwood's *work record* prior to the hearing, and the hypothetical posed by the ALJ referred to the

MSS completed by Dr. Budzenski and Brown (neither of which endorsed any environmental restrictions), it is not clear from the record whether VE Grezsik reviewed Smallwood's *medical records*, or any other exhibits, prior to the hearing. Although Smallwood testified at the second hearing, neither his asthma nor purported sensitivities to dust were discussed.

If the ALJ had failed to recognize this oversight, then case law indicates a remand could be in order. *See **Young***, 362 F.3d at 1004-05 (reversing due to an incomplete hypothetical that did not allow a VE to take into account all limitations supported by medical evidence in the record). However, this omission was recognized by the ALJ and considered in his opinion while making his Step Five determination. The ALJ consulted the D.O.T.'s description of the three jobs VE Grezsik proposed and concluded there were no adverse environmental conditions in the positions of hand packager (D.O.T. code 920.587-018; 7,500 regional jobs), storage laborer (D.O.T. code 922.687-058; 9,000 regional jobs), and only occasional exposure to environmental conditions in the position of salvage laborer (D.O.T. code 929.687-022; 4,000 regional jobs). Thus, the ALJ determined that in spite of *all* of Smallwood's limitations, there existed a significant number of jobs available in the economy.

As Smallwood points out in his brief, and the government concedes, the ALJ was mistaken in his assessment that the hand packager position could be performed by someone who must avoid concentrated exposure to pulmonary irritants. But even after

40

eliminating this position, the government contends the error is harmless since 13,000 suitable jobs still remain. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993)(holding that 1,400 jobs is a "significant number"). Smallwood has not shown that he would be precluded from working in the remaining two positions, storage laborer and salvage laborer, because of the limitation to avoid concentrated exposure to pulmonary irritants. Smallwood notes in his brief that the salvage laborer position requires only *occasional* exposure to environmental conditions, but this is not at odds with the ALJ's assessment that Smallwood should avoid *concentrated* exposure to irritants. Smallwood also contends that the positions of storage laborer and salvage laborer require dealing with work-related judgments and detailed instructions, and so he would be precluded based on his RFC from performing these jobs. However, these limitations were contemplated in the hypotheticals posed by the ALJ to VE Grezsik. The ALJ specifically asked VE Grezsik to consider Smallwood's mental residual functional capacity as assessed in Brown's finding that Smallwood was limited in his ability to judge and follow detailed instructions, and VE Grezsik responded by listing the three positions detailed above as available to someone given Smallwood's limitations.

Finally, Smallwood argues a remand is in order by pointing to *Prochaska*. In *Prochaska*, a remand was granted due to confusion whether the VE's testimony conflicted with the D.O.T., which was caused by the ALJ's failure to inquire whether the VE's

testimony was consistent with the D.O.T. ***Prochaska***, 454 F.3d at 736. However, the ALJ here did ask whether the VE's testimony was consistent with the D.O.T., and the VE responded affirmatively. The VE's testimony provided the ALJ with a list of positions that Smallwood could perform given all of his limitations but one.

Based on the VE's testimony and the ALJ's own examination of the D.O.T. to confirm that the VE's list of positions would not be eliminated by the additional pulmonary irritant limitation, the ALJ concluded that a significant number of jobs existed that Smallwood could perform given his age, education, work experience, and RFC. Even after eliminating the position of hand packager from this list, a significant number of jobs (13,000) remain. *See Lee*, 988 F.2d at 794 (determining that 1,400 jobs is a "significant number"). Because Smallwood has not met his burden of showing that the other two remaining jobs, storage laborer and salvage laborer, would be eliminated as the result of his limitation to avoid concentrated exposure to pulmonary irritants, a "reasonable person [can] conclude that the evidence supports the [ALJ's] decision" to deny awarding Smallwood's disability benefits to Smallwood. *See **Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002)(supporting such a conclusion under this analysis).

---

For the aforementioned reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to close the case.

ENTERED this 11th day of August, 2009.


                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge